304 Ga. 285
FINAL COPY

S18A0845. KENNEDY v. THE STATE.

PETERSON, Justice.

Quinntavish Kennedy appeals his convictions for malice murder and other crimes related to the shooting death of Isiah Archible.[1] At his trial, the State introduced other acts evidence under OCGA § 24-4-404 (b) ("Rule 404 (b)"), and Kennedy's sole argument on appeal is that his trial counsel was ineffective for failing to object to the prosecutor's closing argument referencing that evidence, which Kennedy interprets as an impermissible argument that he had a

---

[1] Archible was killed on May 24, 2012. On August 31, 2012, a Fulton County grand jury indicted Kennedy for malice murder, three counts of felony murder (predicated on aggravated assault, possession of a firearm by a first offender probationer, and attempt to commit armed robbery), attempt to commit armed robbery, one count of aggravated assault with a deadly weapon for shooting at Archible, another count of aggravated assault with a deadly weapon for shooting at Ronald Woods, possession of a firearm during the commission of a felony, and possession of a firearm by a first offender probationer. Following a jury trial held in May 2015, the jury found Kennedy guilty of all charges. The trial court sentenced Kennedy to life imprisonment for malice murder, a consecutive twenty-year term for the aggravated assault on Woods, and a consecutive five-year probationary term for possession of a firearm during the commission of a felony. The trial court merged or vacated the remaining verdicts, and these rulings have not been challenged on appeal. On October 30, 2017, the trial court denied Kennedy's motion for new trial, as amended. Kennedy filed a timely notice of appeal, and his case was docketed to this Court's April 2018 term and orally argued on June 4, 2018.

propensity for committing crimes. But trial counsel was not deficient because a reasonable attorney could have interpreted the prosecutor's statements merely as arguing that the evidence established Kennedy's intent to commit the charged crimes. We affirm.

Viewed in the light most favorable to the jury verdicts, the trial evidence showed the following. Around 11:00 a.m. on May 24, 2012, Archible and his brother-in-law, Ronald Woods, drove to Kennedy's residence at Pine Tree Condominiums in Fulton County, where Archible hoped to buy a car from Kennedy. Woods and Archible met Kennedy outside. When Kennedy approached the car, he opened the rear door and asked repeatedly to see the money. Kennedy became agitated when Archible and Woods asked to see the car first. Kennedy then pulled out a gun and said, "You know what time it is." When Archible saw the gun, he put the car in drive and began to accelerate. Kennedy jumped into the back seat of Archible's car as it began to move and started firing the gun. Woods reached into the back seat and struggled with Kennedy, trying to direct the gun away from himself and Archible. During the struggle, Woods was shot in the thumb, while Archible was fatally shot in the back of the head. The car traveled a short distance before crashing into a utility pole. Woods ran

to a nearby house to call for help, while Kennedy ran off toward the woods through Creel Park. Upon his subsequent arrest, Kennedy claimed that he was in South Carolina at the time of the murder.

At trial, the State was allowed to introduce evidence of Kennedy's participation in two other armed robberies as other acts evidence under Rule 404 (b) for the purpose of establishing intent and identity. The first offense, for which Kennedy pleaded guilty to robbery and possession of a firearm during the commission of a felony, occurred in December 2007. The victim, Rori Williams, stated that Kennedy was one of two men who robbed her and her friend at gunpoint as they were sitting in Williams's parked car at Creel Park. The second robbery occurred near the Pine Tree Condominiums at about 5:00 a.m. on May 24, 2012, several hours before the shooting in this case. Freddie Buffington identified Kennedy as one of the men who robbed him while carrying a gun.

Kennedy testified at his trial and claimed self-defense. Kennedy said that he was meeting with Archible and Woods to sell them marijuana, and that after he showed them the marijuana in Archible's car, Woods pulled a gun and tried to rob him. Kennedy testified that he and Woods struggled for the gun as Archible drove, with multiple shots fired during the struggle. Woods lost the gun

3

when the car crashed, Kennedy claimed, and Kennedy picked up the gun and shot Woods as Woods reached for him. Kennedy said he fled after the shooting and went to South Carolina later that day. When asked if he had intended to rob Archible and Woods, Kennedy responded, "No, ma'am. I had no intentions. My intentions was to sell this weed." He also claimed he did not know that Archible had been shot and denied being involved in the robbery of Buffington hours before Archible's death.

In his closing argument, the prosecutor repeatedly challenged Kennedy's claim that he had no intent to rob the victims, and recounted the witnesses' testimony, including the testimony on the prior robberies. The prosecutor then said:

> Now let's talk about corroboration. Corroboration is where we do our best, ladies and gentlemen, to put everything together. To put it all together. Let's talk about the timeline. 2007 [Kennedy] robs Rori Williams. May 24, 2012, early in the morning he robs Freddie Buffington. May 24, 2012, he attempts to rob Mr. Archible and Mr. Woods and ends up killing Mr. Archible in the process. Ladies and gentlemen, what you have witnessed in this courtroom over the past two to three days is the graduation of a criminal. He is graduating. He started off with robbery. He stepped it up to armed robbery. And then he goes out and does an armed robbery or attempts to do one and kills someone. You all just saw the evolution of a criminal all in about two days. That, ladies and gentlemen, is corroboration.

The prosecutor continued by citing to additional evidence that corroborated Woods's testimony.

1. Although Kennedy does not challenge the sufficiency of the evidence, it is our customary practice in murder cases to review the record independently to determine whether the evidence was legally sufficient. Having done so, we conclude that the evidence was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Kennedy was guilty of the crimes for which he was convicted. See Jackson v. Virginia, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).

2. Kennedy argues that the prosecutor's statements about the "graduation" and "evolution" of a criminal were an improper argument that his prior criminal acts reflected his propensity for committing crimes, and that his trial counsel was ineffective for failing to object to the prosecutor's statements. We disagree that counsel's failure to object amounts to ineffective assistance.

To establish that trial counsel was constitutionally ineffective, Kennedy "must show that trial counsel's performance fell below a reasonable standard of conduct and that there existed a reasonable probability that the outcome of the case would have been different had it not been for counsel's deficient

5

performance." Scott v. State, 290 Ga. 883, 889 (7) (725 SE2d 305) (2012) (citing Strickland v. Washington, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984)). Where an appellant fails to meet his burden in establishing one prong of the Strickland test, we need not review the other, as a failure to meet either of the prongs is fatal to an ineffectiveness claim. See Smith v. State, 296 Ga. 731, 733 (2) (770 SE2d 610) (2015). On review of an ineffectiveness claim, we review a trial court's factual findings for clear error and its legal conclusions de novo. Lawrence v. State, 286 Ga. 533, 534 (2) (690 SE2d 801) (2010).

Although trial counsel testified at the motion for new trial hearing that she should have objected to the prosecutor's argument, trial counsel's own hindsight assessment of her performance does not control. See Mohamud v. State, 297 Ga. 532, 533 (2) (a) (773 SE2d 755) (2015). Instead, to establish that trial counsel was deficient, Kennedy has to show that no reasonable attorney would have failed to object to the prosecutor's argument. Id. at 534 (2) (a); see also Smith v. State, 296 Ga. 731, 735-736 (2) (b) (770 SE2d 610) (2015) (trial counsel's failure "must be patently unreasonable to rise to the level of deficient performance" (citation and punctuation omitted)). This he has failed to do.

6

That is because the line between propensity and intent is sometimes difficult to recognize, as is the case here. We have acknowledged repeatedly that it is often difficult to discern the distinction between the permissible purpose of proving intent and the impermissible purpose of showing a propensity to commit crimes. See Booth v. State, 301 Ga. 678, 685 (3) n.6 (804 SE2d 104) (2017); State v. Jones, 297 Ga. 156, 163 (3) (773 SE2d 170) (2015). Focusing solely on the phrases "graduation of a criminal" and "evolution of a criminal," one may view the prosecutor's statements as a propensity argument that Kennedy was a criminal who was increasing the severity of his crimes.

But viewing the phrases in context, others may reasonably interpret the prosecutor's argument as addressing Kennedy's intent to commit the crimes here. Kennedy expressly testified that he did not have an intent to commit the crimes, and the prosecutor's closing argument repeatedly challenged Kennedy's claim that he lacked intent. There is no dispute that the prosecutor's challenged comments referenced the other acts evidence, which the trial court admitted for purposes of establishing intent and identity.[2] Prior to the challenged statements,

---

[2] Although Kennedy, through trial counsel, challenged the admission of the other acts evidence on the ground that it would be used only to show his criminal propensity, he does not challenge on appeal the court's ruling that the evidence was admissible to prove intent

7

the prosecutor prefaced his argument by saying he wanted to "talk about corroboration" and to "put everything together." The challenged statements were concluded with the prosecutor stating, "That, ladies and gentlemen, is corroboration," although the prosecutor continued to point to additional evidence that corroborated Woods's testimony. As Kennedy concedes, he and Woods are the only living people who know what happened inside the vehicle, and so the jury's verdict rested on whose version they credited.

Since the other acts evidence was admitted to prove intent, the State was allowed to argue it. The other acts evidence made it more probable that Kennedy intended to rob Woods and Archible and shot them during the robbery, as Woods claimed, rather than that Woods tried to rob Kennedy, as Kennedy claimed. See Olds v. State, 299 Ga. 65, 72 (2) (786 SE2d 633) (2016) ("[E]vidence that an accused committed an intentional act generally is relevant to show — the evidence, in other words, has *some* tendency to make more or less probable — that the same defendant committed a similar act with the same sort of intent, especially when the acts were committed close in time and in

_____

or identity. We express no opinion as to whether the evidence was admissible for those purposes.

8

similar circumstances." (emphasis in original)); see also 2 Weinstein's Federal Evidence § 404.22 (1) (a) ("The requisite intent may be inferred from the fact that, after being involved in a number of similar incidents, the defendant must have had a mental state that is inconsistent with innocence.") (quoted in Olds, 299 Ga. at 72 (2)).

When viewing the prosecutor's statements in context, then, it is not obvious that the prosecutor was making a propensity argument. Although one could reasonably interpret the prosecutor's statements as making that argument, it is also reasonable to interpret those statements as an argument that the other acts evidence was relevant to establish that Kennedy intended to rob the victims. See United States v. Pollock, 926 F2d 1044, 1048 (11th Cir. 1991) ("[W]hat appears to one person as propensity may be intent to another; the margin between is not a bright line."). Because the prosecutor's statements, in context, did not constitute a clear propensity argument, Kennedy has not demonstrated that no reasonable attorney would have failed to object to those statements. As a result, his ineffective assistance claim fails.

Judgment affirmed. Hines, C. J., Melton, P. J., Benham, Hunstein, Nahmias, Blackwell, and Boggs, JJ., concur.

9

Decided August 20, 2018.

Murder. Fulton Superior Court. Before Judge LaGrua.

Ryan C. Locke, for appellant.

Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, F. McDonald Wakeford, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Jason M. Rea, Assistant Attorney General, for appellee.