**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**RAY and RICKMAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 23, 2018**

# In the Court of Appeals of Georgia

A18A1018. COBB v. THE STATE.

MCFADDEN, Presiding Judge.

After a jury trial, Allen Merrill Cobb was convicted of aggravated assault, riot in a penal institution, and obstruction of an officer. He appeals the denial of his motion for new trial, arguing that trial counsel was ineffective. But Cobb has not shown that trial counsel's performance was both deficient and prejudicial. So we affirm.

1. *Facts and procedural posture.*

Viewed in the light most favorable to the verdict, see *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979), the evidence shows that Cobb was an inmate at Hays State Prison and was involved in a riot in one of the prison dining halls. The riot started when Sergeant Smith, a correctional officer,

confronted Cobb's co-defendant Raymond Razo, who had snuck in line to get a second tray of food. Sergeant Smith was the sole correctional officer stationed in the dining-room portion of the dining hall, where about 60 inmates were present. When Razo tried to sneak in line a third or fourth time, Smith used his radio to try to call his lieutenant and members of the correctional emergency response team, who were stationed outside the dining hall.

Correctional Officer Chapman, who was supervising inmates preparing food in the kitchen, heard Smith and came out from the kitchen. Chapman ordered Razo to leave the dining hall and began to escort him out. Razo appeared to cooperate with Chapman, but then turned around and struck Sergeant Smith in the face. Smith then was attacked from behind by inmates he could not identify. Inmates separated Chapman and Smith, and co-defendant William Castillo struck Chapman in the face. Chapman radioed for help. The encounter escalated, eventually involving several correctional officers and between 25 and 35 inmates.

Sergeant Drummond, one of the officers who responded to the call for help, ordered inmates to the ground. Inmates started swinging at him; he could not identify them. He started spraying pepper spray.

The victim of appellant Cobb's attack was Officer Schrader, the leader of the correctional emergency response team that had responded to the disturbance. When Schrader entered the dining hall, he began spraying pepper spray. He used his baton to strike two inmates who were attacking Sergeant Drummond.

An inmate struck Schrader from behind with a wooden cane, shattering it. Schrader could not identify that inmate. When Schrader turned around, Cobb struck him in the face with a sharp, homemade metal weapon. Then a group of inmates picked up Schrader, slammed him to the ground, and began kicking him. One or two inmates slammed a dining table into Schrader. Schrader suffered a concussion, a split lip, cuts, stab wounds, and bruised bones.

Of all the inmates who attacked him, Schrader was only able to identify Cobb. He did not know Cobb by name, but he looked through photographs, identified him, and determined his name.

Schrader made two sworn, written statements about the incident, but he did not identify Cobb (or any other attacker) in either statement. However, in a conversation with the Department of Corrections investigator who prepared one of the statements, he did identify Cobb.

3

The deputy warden identified co-defendant James Roberts as the inmate who hit Schrader with the cane. None of the other correctional officers who testified at the trial were able to identify any of the inmates who attacked Schrader. One of the officers, Schrader's partner, testified that Cobb hit *him*; he did not testify that Cobb hit Schrader.

None of the defendants testified, but other inmates did. Inmate Joshua Perry testified that even before the correctional emergency response team members arrived in the dining hall, he had dropped to the floor and that Cobb was lying on the floor next to him while the altercation took place.

Cobb was indicted for aggravated assault, simple battery, two counts of riot in a penal institution, and two counts of obstruction of an officer. He was tried before a jury with co-defendants Castillo, Razo, and Roberts. The jury found Cobb guilty of aggravated assault, one count of riot in a penal institution, and one count of obstruction of an officer, and not guilty of another count of riot in a penal institution, another count of obstruction of an officer, and simple battery. The trial court imposed a twenty-year sentence for aggravated assault, a consecutive twenty-year sentence for riot in a penal institution, and a consecutive five-year sentence for obstruction of an officer. Cobb's motion for a new trial was denied, and this appeal followed.

2. *Effective assistance of counsel*.

Cobb argues that he received ineffective assistance of counsel due to counsel's failure to call two witnesses: another inmate who claimed that Cobb was not involved in the riot and an expert on eyewitness identification. Cobb also argues that, cumulatively, counsel's errors harmed his case.

To prevail on these claims, Cobb "must show both that (his) counsel's performance was deficient and that the deficient performance so prejudiced (him) that, but for the deficiency, there is a reasonable probability that the outcome of the trial would have been different." *Reeves v. State*, 346 Ga. App. 414, 418 (3) (816 SE2d 401) (2018) (citation omitted). As for deficient performance, the question is whether the errors "are unreasonable ones no competent attorney would have made under similar circumstances." *Stripling v. State*, 304 Ga. 131, 138 (3) (b) (816 SE2d 663) (2018) (citations and punctuation omitted). As for prejudice, "[t]he question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland v. Washington*, 466 U. S. 668, 695 (III) (B) (104 SCt 2052, 80 LE2d 674) (1984). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the

5

ineffectiveness claim." *McAllister v. State*, 343 Ga. App. 213, 217 (3) (807 SE2d 14) (2017) (citation and punctuation omitted).

(a) *Failure to interview and to call a fellow inmate to testify.*

Cobb argues that counsel was ineffective for failing to interview and to call to testify fellow inmate Keith Dixon, who would have testified that Dixon himself inflicted the injuries that Schrader testified Cobb had inflicted. Cobb has failed to make the required showing of prejudice.

At the motion for new trial hearing, Dixon testified that he was present at the riot; that he struck Schrader with a wooden cane several times, contradicting the deputy warden's testimony identifying co-defendant James Roberts as the inmate who hit Schrader with the cane; and that Cobb was not involved in the fight. Dixon testified that he was the inmate who caused Schrader's injuries by striking him with the cane.

But Schrader testified that he was injured not only when he was struck with the cane, but also when he was attacked with the sharp, homemade metal weapon. As for Dixon's testimony that Cobb was not involved in the fight, similar evidence was presented to the jury through the testimony of inmate Joshua Perry, who testified that Cobb was lying on the floor next to him while the altercation took place. So Perry's

testimony supplied the same kind of exculpatory testimony Cobb argues Dixon would have provided.

Because Dixon's testimony did not point to another person as the individual who used a sharp, homemade metal weapon against Schrader and would have been largely cumulative of information already heard by the jury, Cobb was not prejudiced by the omission of his testimony. See *Walton v. State*, 303 Ga. 11, 14-15 (2) (810 SE2d 134) (2018); *Rakestrau v. State*, 278 Ga. 872, 873-874 (2) (608 SE2d 216) (2005). His claim of ineffective assistance of counsel in this regard fails.

(b) *Failure to call an expert witness*.

Cobb argues that trial counsel was ineffective for failing to obtain an expert to testify about the fallibility of eyewitness identifications. He has not shown that trial counsel's performance was deficient.

At the motion for new trial hearing, an associate professor of psychology was qualified as an expert in the field of eyewitness identification. She testified generally about factors, many of which were present in this case, that adversely affect a witness's ability to make a correct identification, including the complexity of the circumstances surrounding the witness; the presence of stress; whether the witness is physically struck; whether a weapon is present in the encounter; whether the

witness identifies someone of a different race; and the passage of time between the encounter and the identification. The expert testified that she would expect a greater chance of misidentification under the circumstances of the prison riot.

But she also testified that other factors present in this case could enhance the reliability of an eyewitness identification. For example, she testified that an eyewitness's ability to correctly identify someone is enhanced if the eyewitness sees that person every day and she acknowledged that Schrader had testified at trial that although he did not know Cobb by name, he recognized him and was familiar with him. She also testified that seeing the person in the usual place and time helps enhance the reliability of an identification.

Moreover, the expert did not opine on the reliability of the particular eyewitness identification in this case. Instead, she testified that although she would expect a greater chance of error in the correctional officers' identifications under the circumstances, there was no way for her to apply the research to the transcript of Cobb's trial and determine that there had been a misidentification.

Trial counsel testified at the motion hearing that he had a two-pronged defensive strategy: he would highlight the fact that correctional officers placed Cobb in different locations at the same time, implying that Cobb could not have been the

inmate who attacked Schrader, and he would show that Schrader could have mistakenly identified Cobb, observing that Schrader identified Cobb only when he gave his third account of the riot. Counsel testified that it was not a strategic decision not to hire an expert; it "just didn't cross [his] mind," but that such an expert would have been helpful to his defense.

> [W]e are not limited in our assessment of the objective reasonableness of lawyer performance to the subjective reasons offered by trial counsel for his conduct. If a reasonable lawyer might have done what the actual lawyer did — whether for the same reasons given by the actual lawyer or different reasons entirely — the actual lawyer cannot be said to have performed in an objectively unreasonable way.

*Hurt v. State*, 298 Ga. 51, 57 (3) (b) (779 SE2d 313) (2015) (citation omitted). "[T]rial counsel's own hindsight assessment of [his] performance does not control. Instead, to establish that trial counsel was deficient, [Cobb] has to show that no reasonable attorney would have failed to [call an expert on eyewitness identification]." *Kennedy v. State*, __ Ga. __ (2) (__ SE2d __), 2018 Ga. LEXIS 540, at *6 (Case No. S18A0845, decided Aug. 20, 2018) (citations omitted). Further, "[t]rial counsel are not constitutionally deficient as a matter of law simply because they do not present all reasonably available mitigating evidence, even if the omitted

9

evidence is consistent with their chosen strategy." *Humphrey v. Nance*, 293 Ga. 189, 192 (II) (A) (744 SE2d 706) (2013) (citations omitted).

The failure to call an expert on eyewitness identifications is not per se patently unreasonable. Our Supreme Court recognized in *Glass v. State*, 289 Ga. 542 (712 SE2d 851) (2011), that

> [t]he holding in *Johnson v. State*, 272 Ga. 254 (526 SE2d 549) (2000), concerning testimony of an expert in eyewitness identification does not stand for the proposition that defense counsel is required to call an expert witness at trial where one of the primary issues involved is eyewitness identification of the defendant, let alone the proposition that the failure to call such an expert witness amounts to ineffective assistance.

*King v. State*, 336 Ga. App. 531, 545, 784 S.E.2d 875, 887 (2016), disapproved in part on other grounds by *Quiller v. State*, 338 Ga. App. 206, 209 n. 3 (789 SE2d 391) (2016).

In cross-examining Schrader, counsel highlighted that Schrader did not identify Cobb as his attacker in the sworn statements he gave on the day of the incident and less than three weeks later. He cross-examined Schrader's partner, who had testified that Cobb hit the partner, to show that Cobb could not have been physically present at the location where Schrader was attacked. He also emphasized through cross-

10

examination of inmate Joshua Perry that Cobb was on the floor next to Perry during the incident. Trial counsel's failure to call an eyewitness expert was not a patently unreasonable method of implementing his strategy to discredit Schrader's testimony. So the failure did not rise to the level of deficient performance.

(c) *Cumulative effect*.

Finally, Cobb argues that there is a reasonable probability that the cumulative effect of counsel's alleged errors prejudiced the outcome of his trial. In light of the above analysis, his argument is unavailing:

> we evaluate only the effects of matters determined to be error, not the cumulative effect of non-errors. As explained above, [Cobb] has failed to show that counsel was professionally deficient in [failing to call an eyewitness expert]. Assuming, without deciding, that the failure to [call inmate Keith Dixon] was deficient, [Cobb] has not shown *Strickland* prejudice from [this omission]. Therefore, his cumulative effect assertion has no merit.

*Sullivan v. State*, 301 Ga. 37, 42 (2) (d) (799 SE2d 163) (2017) (citations and punctuation omitted).

*Judgment affirmed. Ray and Rickman, JJ., concur.*