**FIFTH DIVISION**
**MCFADDEN, C. J.,**
**MCMILLIAN, P. J. and GOSS, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**July 1, 2019**

# In the Court of Appeals of Georgia

A19A0608. FRANKLIN v. THE STATE.

McFADDEN, Chief Judge.

After a jury trial, Diana Franklin was convicted of nineteen counts of cruelty to children in the first degree, eight counts of false imprisonment, and one count of aggravated assault for acts against her teenaged daughter, A. F. On appeal, she argues that the trial court erred in failing to merge several of the convictions for sentencing; we disagree, except as to her eight false-imprisonment convictions, which the state has conceded should merge into her child-cruelty convictions. She argues that the trial court erred in failing, sua sponte, to order a mistrial after making an improper comment on the evidence, but the record does not show that she objected to the comment at trial and Franklin has not shown that the comment was plain error. And she argues that she received ineffective assistance of counsel, asserting that her trial

counsel was deficient in numerous ways, but she has not shown that she was prejudiced by any deficient performance of her trial counsel. So we affirm the judgment, vacate the sentence, and remand the case for resentencing.

1. *Facts and procedural history.*

Viewed in the light most favorable to the jury verdicts, the trial evidence showed that Franklin and her husband adopted A. F. in 2007, when the girl was 10 years old. Five years later, on May 25, 2012, the Department of Family and Children Services (DFCS) removed A. F. from Franklin's home after receiving an anonymous tip from one of Franklin's former neighbors that a child was being held in a padlocked, cinder-block building on the property. When DFCS found A. F., the girl was thin and frail. The state ultimately charged Franklin with numerous offenses based on the following conduct.

(a) *Confinement in a cinder-block building.*

The trial evidence showed that on several occasions in 2011 and 2012, Franklin confined A. F. for periods of up to seven days in a detached cinder-block building on Franklin's property. The instances of confinement occurred in both hot and cold weather, and A. F. often had inadequate clothing for the weather. Sometimes Franklin

would provide A. F. with some food during the confinement, such as bread and water, oatmeal, grits, or cold canned goods. But often Franklin provided no food to A. F.

Franklin used a padlock to lock A. F. into the building. The building had no heat or air conditioning and could reach inside temperatures of over 90 degrees Fahrenheit; it also had no bathroom or running water, forcing A. F. to use a chamber pot that at times she would be unable to empty for days. The building had a partial dirt floor, one small window, and was used to store items such as tools, propane containers, paint, and other chemicals. By the spring of 2012, Franklin had placed a cot in the building and was requiring A. F. to live there, padlocked into the building, most of the time.

On the afternoon of May 25, 2012, the day DFCS employees removed A. F. from Franklin's house, Franklin had just released the girl from the cinder-block building, in which A. F. had been padlocked for a day and a half with no food in temperatures exceeding 90 degrees.

A. F. testified that when she was confined (either in this building or in the other structures described below), she would cry all of the time. She stated: "I wanted to kill myself or beg God to kill me."

(b) *Confinement in a chicken coop.*

The trial evidence showed that on several occasions in 2010, 2011, and 2012, Franklin confined A. F. for periods of up to seven days in the storage area of an uninsulated chicken coop on Franklin's property. The instances of confinement occurred in both hot and cold weather, and A. F. often had inadequate clothing for the weather. Sometimes Franklin would confine A. F. to the chicken coop with no clothing, food, or water. Chickens lived in the coop in an area separated from A. F. by a wire partition. On at least one occasion, Franklin forced A. F. to walk naked to the chicken coop, in view of a public road, before confining her there. And at one point, when she was confined in the coop, A. F. tried eating dog food that was stored there.

(c) *Confinement in an outhouse.*

The trial evidence showed that on several occasions in 2011 and 2012, Franklin confined A. F. for up to seven days in an uninsulated outhouse in a remote area on her property, about a half-mile away from the house. The instances of confinement occurred in both hot and cold weather, and A. F. often had inadequate clothing for the weather or no clothing at all. Often Franklin would not provide any food to A. F. during the confinements.

The outhouse was made of wood with a tin roof and it had a toilet seat inside on a ledge. It had a board on the door that prevented A. F. from opening the door. It had cracks in the walls that A. F. would stuff with toilet paper during cold weather. It had no electricity or lighting, leaving A. F. in total darkness at night, which frightened her and caused her to cry and scream for help.

(d) *Confinement in a closet.*

The trial evidence showed that on several occasions in 2011 and 2012, Franklin confined A. F. for up to seven days in an unlit closet in Franklin's bedroom. Franklin blocked the door to the closet but would allow A. F. out of the closet once a day to use the bathroom. Some days, but not every day, Franklin would provide A. F. with a piece of bread and half a glass of water while she was in the closet.

(e) *Other acts against A. F.*

The trial evidence showed that on one occasion Franklin tied A. F. to a tree for approximately 12 hours. Once it got dark, A. F. became scared and depressed, and she began crying and screaming for help.

The trial evidence showed that Franklin made A. F. wear shock collars, typically used for a dog, and she would shock her, causing the girl physical and emotional pain.

The trial evidence showed that on one occasion, after A. F. threatened to kill herself, Franklin put a handgun to A. F.'s head and said, "I'll do it for you." A. F. was scared and believed that Franklin intended to kill her. Although she cried and begged Franklin not to shoot her and several times tried to push the gun away, Franklin continued to hold the gun against A. F.'s head. She put the gun away only after being admonished by one of her sons, who had entered the room.

Finally, the trial evidence showed that sometimes Franklin would force A. F. to lay naked on a bed and would then beat her with the strap and buckle of a belt. The beatings were painful to A. F. and left marks on her back.

2. *Merger.*

Franklin argues that the trial court erred in failing to merge for sentencing purposes most of the crimes of which she was convicted. This claim of error concerns her convictions for various crimes arising from her confinement of A. F. in the cinder-block building, the chicken coop, the outhouse, and the closet. Our analysis of this argument requires a more detailed discussion of these specific crimes.

As to the cinder-block building, Franklin was convicted of crimes committed in three separate periods: between May 21, 2012, and May 25, 2012; between January 1, 2012, and April 30, 2012; and between June 1, 2009, and December 31, 2011. She

6

was convicted of three separate offenses occurring in each of these periods: first-degree cruelty to children in violation of OCGA § 16-5-70 (a) (wilfully depriving a child of necessary sustenance), for giving A. F. little to no food during her confinement; first-degree cruelty to children in violation of OCGA § 16-5-70 (b) (maliciously causing a child cruel or excessive physical or mental pain), for confining her during hot or cold weather with little or no clothing; and false imprisonment in violation of OCGA § 16-5-41 (a).

As to the chicken coop and outhouse, Franklin was convicted of crimes committed in two separate periods: between January 1, 2012, and May 21, 2012, and between June 1, 2009, and December 31, 2011. Again, as to each of those locations, she was convicted of three separate offenses occurring in each of these periods: first-degree cruelty to children in violation of OCGA § 16-5-70 (a) (wilfully depriving a child of necessary sustenance), for giving A. F. little to no food during her confinement; first-degree cruelty to children in violation of OCGA § 16-5-70 (b) (maliciously causing a child cruel or excessive physical or mental pain), for confining her during hot or cold weather with little or no clothing; and false imprisonment in violation of OCGA § 16-5-41 (a).

As to the closet, Franklin was convicted of two separate offenses committed between June 1, 2009, and December 31, 2011: first-degree cruelty to children in violation of OCGA § 16-5-70 (a) (wilfully depriving a child of necessary sustenance), for giving A. F. little to no food during her confinement; and first-degree cruelty to children in violation of OCGA § 16-5-70 (b) (maliciously causing a child cruel or excessive physical or mental pain). She also was convicted of false imprisonment in violation of OCGA § 16-5-41 (a) for acts committed between June 8, 2009 and December 31, 2011.

Franklin argues that these convictions should merge such that she receive only one sentence for crimes committed in each of the four locations. At oral argument, the state agreed with part of Franklin's claim, conceding that her false-imprisonment convictions merge with her child-cruelty convictions. So we do not address her merger argument as it relates to the false-imprisonment convictions but vacate the sentence and remand for the trial court to treat the false-imprisonment convictions as merged and to resentence Franklin accordingly.

But the trial court properly declined to merge Franklin's various child-cruelty convictions. "When the same conduct of an accused may establish the commission of more than one crime, the accused may be prosecuted for each crime. He may not,

however, be convicted of more than one crime if . . . [o]ne crime is included in the other[.]" OCGA § 16-1-7 (a) (1). "To determine whether one crime is included in another, and therefore merges as a matter of fact, the court must assess whether conviction for one of the offenses is established by proof of the same or less than all the facts required to establish the other crime." *Sullivan v. State*, 301 Ga. 37, 43 (3) (799 SE2d 163) (2017) (citation and punctuation omitted). Moreover, "where one crime is completed before another crime, the 'same conduct' does not establish the commission of both offenses, and the rule prohibiting more than one conviction if one crime is included in the other does not apply." *Cordero v. State*, 296 Ga. 703, 711 (3) (770 SE2d 577) (2015) (citation and punctuation omitted). We review the merger issue de novo. *Womac v. State*, 302 Ga. 681, 684 (3) (808 SE2d 709) (2017).

Franklin's convictions for child cruelty fell under two distinct subdivisions of OCGA § 16-5-70 — convictions based on Franklin depriving A. F. of necessary sustenance under OCGA § 16-5-70 (a), and convictions based on Franklin causing A. F. cruel or excessive physical or mental pain under OCGA § 16-5-70 (b). These categories of convictions do not merge, because each subsection of the Code section "requires proof of a fact which the other does not." *Womac*, 302 Ga. at 684 (3) (citation and punctuation omitted). Likewise, the child-cruelty convictions based on

9

A. F.'s confinement in different locations do not merge, because the trial evidence authorized the jury to find that each of these crimes "was completed before the commission of a subsequent crime[.]" Id. at 685 (3). Similarly, the child-cruelty convictions set in different time periods were also based on crimes that were "completed before the commission of a subsequent crime[.]" Id.

For these reasons, we find that the trial court properly held that Franklin's child-cruelty convictions do not merge, and based on the state's concession we vacate the sentence and remand the case for the trial court to merge Franklin's false-imprisonment convictions into her child-cruelty convictions and to then resentence her.

3. *Comment on the evidence.*

Franklin argues that the trial court made an improper comment in violation of OCGA § 17-8-57 (a) (1), which provides that "[i]t is error for any judge, during any phase of any criminal case, to express or intimate to the jury the judge's opinion as to whether a fact at issue has or has not been proved or as to the guilt of the accused." Because Franklin did not timely object to the comment on the record,[1] we review this

---

[1] Trial counsel testified at the hearing on the motion for new trial that he raised this issue with the trial court in chambers.

claim only for plain error affecting the substantive rights of the parties. OCGA § 17-8-57 (b). To show plain error, Franklin "must point to a legal error that was not affirmatively waived, the error must have been clear and not open to reasonable dispute, the error must have affected [her] substantial rights, and the error must have seriously affected the fairness, integrity[,] or public reputation of judicial proceedings." *Tyner v. State*, 305 Ga. 326, 331 (4) (825 SE2d 129) (2019) (citation omitted). She has not made this showing.

The comment that Franklin challenges occurred when the state's cross-examination of one of Franklin's neighbors became heated. The witness accused the prosecutor of "holler[ing]" at her, followed by an exchange in which the prosecutor told the witness she could "point at [him] all [she'd] like" and the witness replied, "Well, don't holler at me." The prosecutor then asked the judge to admonish the witness and the judge replied, "I'm afraid to." After a brief continuation of the cross-examination, the trial court called for a break, and after that break the trial court made the following statement:

> Let me say, before the break, any comments that I make should not be inferred — it's one of our light moments that — where I make a comment. It should not be inferred as me making an opinion about the credibility of any witness or choosing sides. Really to — I guess a good

11

place to break and keep the momentum going in the case. But I apologize if anybody interpreted what I said to be a slant against the witness. It was not the intent. You should not infer anything negative toward the defendant or the witness in this case for any comment I may make.

As the trial court indicated in his curative instruction, it appears from the transcript that the comment at issue was a "light" or joking comment, not an improper expression of opinion in violation of OCGA § 17-8-57 (a) (1). See *Abernathy v. State*, 278 Ga. App. 574, 591-592 (6) (630 SE2d 421) (2006) (trial court's joking comment did not violate earlier version of OCGA § 17-8-57). But even if the comment could be construed as improper, OCGA § 17-8-57 (a) (2) permitted the trial court to give a curative instruction, and the instruction given by the trial court was sufficient. We discern no plain error.

4. *Ineffective assistance of counsel.*

Franklin argues that she received ineffective assistance of counsel based on numerous alleged instances of deficient performance by her trial counsel. To prevail on this claim, she

> must show both that [her] counsel's performance was deficient and that the deficient performance so prejudiced [her] that, but for the deficiency, there is a reasonable probability that the outcome of the trial would have

12

been different. As for deficient performance, the question is whether the errors are unreasonable ones no competent attorney would have made under similar circumstances. As for prejudice, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt. Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim.

*Cobb v. State*, 348 Ga. App. 210, 212-213 (2) (820 SE2d 241) (2018) (citations and punctuation omitted). On appellate review, we review the trial court's legal conclusions de novo, but we defer to the trial court's factual findings and credibility determinations unless clearly erroneous. *Grant v. State*, 295 Ga. 126, 130 (5) (757 SE2D 831) (2014).

(a) *Overview of the overwhelming nature of the evidence against Franklin.*

In this particular case, we will first describe in more detail the overwhelming nature of the evidence against Franklin to provide context for our analysis of Franklin's numerous, specific allegations of deficient performance. See generally *Taylor v. State*, 303 Ga. 583, 585 (2) (814 SE2d 302) (2018) (where evidence of defendant's guilt was overwhelming, defendant did not show prejudice and his claim of ineffective assistance was without merit). At trial, A. F. testified to all of the acts

establishing the offenses for which Franklin was convicted. As detailed below, other evidence corroborated her testimony.

Several people testified to witnessing some of the acts of abuse described by A. F. in her testimony. On an occasion in 2011, a neighbor saw Franklin take a plate of food to A. F., who was locked in the cinder-block building at the time. In the summer of 2011, a neighbor saw A. F. doing schoolwork in the chicken coop. On a hot day in the spring of 2012, a workman saw A. F. in the padlocked cinder-block building when Franklin opened the building to retrieve a tool; he testified that the girl was standing by a bed looking hungry and scared. When the DFCS employees arrived at Franklin's property on May 25, 2012, they saw A. F. behind the cinder-block building emptying a chamber pot.

There was also evidence that Franklin talked to others about confining A. F. Neighbors and acquaintances testified that Franklin described to them instances when she had confined A. F. in various structures on her property. The instances described by Franklin to others included making A. F. stay in the chicken coop as punishment in 2011 and 2012, sometimes without clothing; locking A. F. into the cinder-block building at night in the spring of 2012; locking A. F. into the outhouse in the spring of 2012; and confining A. F. in the closet either without food or with only bread and

water. In addition, Franklin told a neighbor about making A. F. lie down on a bed, naked, while Franklin spanked her with a belt.

When the DFCS employees went to Franklin's property on the afternoon May 25, 2012, Franklin admitted to them that she had locked A. F. in the cinder-block building the previous morning (a day and a half earlier) and had given the girl no food during that time. The temperature that day exceeded 90 degrees.

Moreover, Franklin documented these acts in detail in handwritten journals. Over Franklin's objection, the trial court admitted the journals into evidence in their entirety, and at trial an agent from the Georgia Bureau of Investigation, who found the journals during a search of Franklin's house pursuant to a warrant, read extensive excerpts from the journals to the jury. In one such excerpt, Franklin described her reaction to A. F. taking food from the family's pantry:

> [S]he stole again. It was suppertime and I was about to surprise her by ending the punishment when I noticed she was wearing her jacket strangely. I had asked her to get eggs. When I went up to her, she tried to hurry out the door. When I stopped her, I touched her jacket where she had a package of crackers. She then confessed to stealing two packs earlier that morning while I was on the phone. Wow, she's fast, but God is faster and faithful to me. To think I was just about to end her punishment completely, to say I was angry is an understatement. So, now she is back in the garage [cinder-block building]. This time no cot

15

to sleep on. [No²] shower in the morning. No coming in the house at all. She gets three crackers a day since she stole crackers because she is hungry, which is not true.

In an excerpt from June 2011, Franklin described A. F.'s confinement in the chicken coop:

Today [A. F.] was let out of her solitary confinement. Now she sleeps on a cot with the chickens. If she's good for seven days, I'll give her a fan. Then another seven days and she will earn the privilege of eating meals with us instead of sandwiches. If at anytime she lies, rebels, or steals, she goes back to the outhouse and starts over. I need to make a chart to help me keep track. I pray this works.

In yet another excerpt from June 2011, Franklin described confining A. F. to the outhouse after she soiled some clothing:

Now she's in the outhouse with no panties or shorts on, plus she goes without water tomorrow because she decided to pour her water out and dehydrate so that Sam [Franklin's husband] and I will be in trouble. Like a spoiled brat that holds his breath until you give him what he wants. Ah. So, I told her we would help her stick to the plan, but for one day, but she don't – but she don't know that. Hehehe.

---

[2] Franklin wrote the word "now" in her handwritten journal, which was a trial exhibit. When the GBI agent read this portion of the journal to the jury, she spelled out the word "N-O-W." From the context, it appears that Franklin meant the word to be "no."

Another excerpt, written on a Thursday, describes a confinement in the closet:

> [A. F.] is still in the closet. She has been there since Tuesday afternoon. Why is she being so stubborn? I put her in there because she wanted to be left alone. No rules, no lectures, no spankings or yelling. Just left alone. Then and only then will she, according to her, learn to trust and love. So, I said okay, and in the clothes closet she went. I told her she can come out when she is right with God and ready to do the work. Nothing has come out of her mouth. Well, a fake I am sorry for being rebellious. That is not what I want. I want true repentance and heart change. So she stays in the closet and life is quiet and peaceful. I'm not yelling or spanking or lecturing. Maybe I'll give her a flashlight and a Bible. Done. Thank you, Holy Spirit, for giving me that idea. So how long? As long as it takes. This morning I gave her some bread and water. That's all she needs for now.

In other excerpts, Franklin describes A. F. receiving "stripes on her back" and states, "[A. F.] threw another temper tantrum and received a lashing."

As with these excerpts, other portions of the journals read to the jury corroborated details from A. F.'s accounts of the abuse Franklin inflicted on her. Franklin does not contest the authenticity of the journals. She admitted at trial that she wrote those words but argued that they were not an accurate depiction of actual events.

17

Keeping this evidence in mind, we turn to Franklin's specific claims of ineffective assistance and find that she has not made the necessary showing. As detailed below, she has not shown deficient performance as to many of the instances she alleges, and even if we assume without deciding that there was deficient performance as to the other instances, she has not shown prejudice either individually or cumulatively due to the overwhelming evidence against her.[3]

(b) *Claims of deficient performance concerning evidence of Franklin's statements or writings that corroborate A. F.'s testimony.*

The main reason the evidence described above is overwhelming is that it concerns Franklin's own statements or writings admitting to the acts that form the basis of the bulk of her convictions — the repeated confinement of A. F. in various

---

[3] In reviewing the claims of ineffective assistance of counsel, we note that both sides have cited decisions of this court or divisions within those decisions that are physical precedent only: *Darst v. State*, 323 Ga. App. 614 (746 SE2d 865) (2013), cited by Franklin, and *Chamberlain v. State*, 347 Ga. App. 775, 781 (3) (a) (819 SE2d 303) (2018), cited by the state. We take this opportunity to remind counsel that physical precedent only decisions are not binding precedent. See Court of Appeals Rule 33.2 (a) (1) ("An opinion is physical precedent only (citable as persuasive, but not binding, authority), however, with respect to any portion of the published opinion in which any of the panel judges concur in the judgment only, concur specially without a statement of agreement with all that is said in the majority opinion, or dissent."). Neither side provided us with argument for why we should base our opinion in this case on non-binding authority.

locations without sufficient food, water, or clothing, which A. F. described in her trial testimony. This evidence was extremely damaging to Franklin's defense, and she argues that her trial counsel was ineffective in certain respects affecting its admission. So we begin our analysis with Franklin's claimed deficiencies relating to that evidence. As detailed below, Franklin has not shown deficient performance.

(i) *Failure to redact portions of the journals.*

Trial counsel strenuously attempted to convince the trial court to exclude Franklin's journals from admission in their entirety, but the trial court ruled the journals admissible and Franklin does not challenge that ruling on appeal. Instead, she argues that her trial counsel was ineffective in failing to redact portions of the journals, noting that her trial counsel's testimony at the hearing on her motion for new trial suggests he "did not seem to be aware that redaction was an option" because he misunderstood the law regarding the rule of completeness. See OCGA § 24-1-106 ("When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which, in fairness, should be considered contemporaneously with the writing or recorded statement."). The only specific portions of the journals that she argues should have been redacted are those portions

19

describing concerns that her husband was having sexual contact with A. F. She argues that allowing the jury to hear those portions of the journals prejudiced her by suggesting a motive for her confinement of A. F. to structures outside the house. But the trial court specifically addressed the admissibility of these portions of the journals and ruled, over the objection of Franklin's trial counsel, that they were admissible because Franklin had opened the door to the evidence in her own testimony on direct examination. Just as Franklin does not enumerate as error the trial court's decision to admit the journals in their entirety, she also does not challenge on appeal the trial court's ruling that she had opened the door to the admission of those particular portions of the journals, and thus she has not shown that any attempt by her trial counsel to redact those portions would or could have been successful. Consequently, she has not shown deficient performance. See *Wesley v. State*, 286 Ga. 355, 356 (3) (a) (689 SE2d 280) (2010) (trial counsel did not perform deficiently by failing to make meritless objection).

(ii) *Failure to object to journals going out with jury during deliberations.*

Franklin argues that her trial counsel should have made a "continuing witness" objection to her journals going back with the jury during their deliberations. Under the continuing witness rule, where the jury has heard written testimony read from the

20

witness stand "it is unfair and places undue emphasis on written *testimony* for the writing to go out with the jury to be read again during deliberations, while oral testimony is received but once." *Williams v. State*, 337 Ga. App. 381, 386-387 (3) (b) (787 SE2d 333) (2016) (citations omitted; emphasis supplied). Documents subject to this rule are those that "generally contain their makers' assertions of purported truths, [and] are ascribed evidentiary value only to the extent that their makers are credible." *Davis v. State*, 285 Ga. 343, 348 (8) (676 SE2d 215) (2009) (citation and punctuation omitted). Franklin's journals were not such documents. Franklin, the maker of the journals, did not assert that they contained the truth; to the contrary, Franklin argued that they often reflected her prayers and expression of emotion, rather than real events. Because the journals "were not written testimony and did not derive their evidentiary value solely from the credibility of [Franklin,] . . . they were original documentary evidence and were properly allowed to go out with the jury." Id. See *Porter v. State*, 270 Ga. App. 860, 861-862 (2) (608 SE2d 315) (2004) (letter written by defendant regarding his alleged molestation of victim, which was properly admitted as documentary evidence, "was not testimony and therefore was not subject to a continuing witness objection"). Trial counsel's failure to make a meritless continuing witness objection was not deficient. See *Wesley*, 286 Ga. at 356 (3) (a).

21

(iii) *Failure to object to evidence of Franklin's statements to DFCS employees.*

Franklin argues that her trial counsel was ineffective in failing to seek the suppression of her inculpatory statements to the DFCS employees when they came to her property on May 25, 2012. Although Franklin made the statements during a non-custodial interview, she argues that they could have been suppressed as involuntary because they were induced by threats that the DFCS employees would contact a special assistant attorney general or a juvenile court judge if Franklin did not let them speak with A. F. alone.

As with the other alleged deficient acts discussed above, Franklin has not shown this to be deficient performance because she has not shown that an objection on this ground would have had merit. See *Wesley*, 286 Ga. at 356 (3) (a). It is true that, "[t]o make a confession admissible, it shall have been made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury." OCGA § 24-8-824. But the "threats" identified by Franklin, and the context in which they were made, do not constitute a "remotest fear of injury" as that phrase has been construed by our courts. See *Price v. State*, __ Ga. __, __ (2) (825 SE2d 178) (2019) ("[I]t is physical or mental torture that prevents a confession from being admissible.") (citation and punctuation omitted).

22

(c) *Other claims for which Franklin has not shown deficient performance.*

Franklin alleges several other instances of ineffectiveness for which she has not shown deficient performance by her trial counsel.

(i) *Failure to object on the record to alleged improper comment by trial court.*

Franklin argues that her trial counsel was ineffective in failing to object on the record to the trial court's comment discussed above in Division 3. But as we explained in that Division, even though her trial counsel did not object on the record, the trial court ultimately gave a curative instruction that was sufficient under OCGA § 17-8-57 (a) (2). Franklin has not shown that any further objection or motion by her trial counsel would have been meritorious, so she has not shown deficient performance. See *Wesley*, 286 Ga. at 356 (3) (a).

(ii) *Failure to seek to redact aliases from indictment.*

Franklin argues that her trial counsel was ineffective for failing to move to redact the indictment to remove references to her aliases. The indictment that went out with the jury stated: "Diana Lynn Franklin, aka Diana L. Glaser, Diana L. Tijerina, Diana L. Quinn, Diana L. Thomas." Although the trial court instructed jury that "[t]here's nothing to be read into [the aliases] other than the fact that it was prior

23

to getting married or there's different names," Franklin argues that these aliases made her look bad before the jury.

Franklin has not shown deficient performance. "It is permissible under Georgia law for an indictment to allege that a defendant has been known by an alias. It is also permissible for a jury to hear or see the allegation pertaining to the alias, and such a reference or disclosure does not, in and of itself, place the defendant's character in issue." *Banks v. State*, 269 Ga. App. 653, 654 (2) (605 SE2d 47) (2004) (citation and punctuation omitted). See *Brown v. State*, 295 Ga. 804, 806-807 (2) (764 SE2d 376) (2014); *Hawes v. State*, 266 Ga. 731, 732 (2) (470 SE2d 664) (1996). Georgia courts have found no error in the disclosure to the jury of aliases such as "Psycho," *Banks*, supra, "Stomper," *Hawes*, supra, and "Iceman," *Scott v. State*, 185 Ga. App. 887, 887-888 (1) (366 SE2d 196) (1988), which are far less innocuous-sounding than Franklin's aliases. Franklin does not deny the aliases, and because she has not shown that a request to redact the aliases would have been meritorious, she has not shown that her trial counsel was deficient for failing to make that request. See *Wesley*, 286 Ga. at 356 (3) (a).

Franklin suggests that we should decide this claim of error under an Eleventh Circuit decision, *United States v. Harriston*, 329 F3d 779, 792 (III) (11th Cir. 2003),

instead of under Georgia law. She cites the rule that we look to federal authority in certain instances to construe Georgia's new Evidence Code. See *State v. Almanza*, 304 Ga. 553, 556 (2) (820 SE2d 1) (2018) ("if a rule in the new Evidence Code is materially identical to a Federal Rule of Evidence, we look to federal case law"). That rule does not apply here, because this claim of error does not implicate any provision of the Evidence Code.

(iii) *Failure to object to evidence of acts by Franklin's husband.*

Franklin argues that trial counsel was ineffective in failing to object to evidence of allegations that her husband had sexual contact with A. F. or to the state's comment on this evidence during closing argument. But the record shows that her trial counsel *did* object to the evidence and the trial court determined that it was admissible. So Franklin has not shown deficient performance.

(iv) *Failure to seek a mistrial after testimony that Franklin did not cooperate with DFCS employees.*

Franklin argues that her trial counsel was ineffective in failing to seek a mistrial after a DFCS employee testified that Franklin had been "very irate, very oppositional" when the DFCS employees and deputy sheriff came to her house in response to the tip that a child was locked in a shed. Without citation to authority, she

argues that this testimony constituted an improper comment on her silence or failure to come forward.

Assuming that this evidence could be construed as a comment on Franklin's silence, "[i]mproper reference to a defendant's silence does not automatically require reversal or mandate a finding of ineffective assistance of counsel." *Hines v. State*, 277 Ga. App. 404, 408 (2) (626 SE2d 601) (2006) (citation and punctuation omitted). Under Georgia's new Evidence Code there is no longer a "categorical rule excluding all comment upon a defendant's pre-arrest silence or failure to come forward[.]" *Rowland v. State*, __ Ga. __, __ (3) (__ SE2d __) (Case No. S19A0289, decided June 3, 2019). The exclusion of such a comment depends on case-specific considerations, see id., and Franklin has made no argument for why the comments in this case required exclusion. So she has not met her burden of showing that her trial counsel's performance in this regard was deficient. See *Pearce v. State*, 300 Ga. App. 777, 786-787 (7) (a) (686 SE2d 392) (2009) (where defendant did not show "that a motion for mistrial would have been meritorious under the circumstances of th[e] case or that the remedial actions taken were insufficient, his claim [of ineffective assistance] fails").

(v) *Failure to object to testimony that law enforcement based a request for a search warrant on information from A. F. or to request a clarifying jury charge.*

26

Franklin argues that her trial counsel was ineffective in failing either to object to the Georgia Bureau of Investigation agent's testimony that she obtained a search warrant for Franklin's property based on information obtained from A. F. or to request a jury charge explaining the lower standard of proof required to obtain a search warrant. She asserts that, as a result, "the jury was left to assume that because there was enough evidence to obtain a search warrant, there must be enough evidence already to say that [she] is guilty."

To show this constituted deficient performance, Franklin must show that no reasonable attorney would have allowed such testimony to go unchallenged or without a request for a clarifying jury charge. See *Kennedy v. State*, 304 Ga. 285, 289 (2) (818 SE2d 581) (2018). She has not met this burden; in fact, she offers no authority in support of this proposition. We find no error in the trial court's determination that Franklin failed to show deficient performance.

(d) *Remaining claims, for which Franklin has not shown prejudice either individually or collectively.*

We need not analyze whether trial counsel performed deficiently in the other respects alleged by Franklin, because even if we assume deficient performance, Franklin has not shown that she was prejudiced either by the individual alleged

27

deficiencies or by them collectively. Those alleged instances of deficient performance are: (1) trial counsel's failure to obtain an in-camera inspection of A. F.'s psychological, school, and other records for use in cross-examining the state's expert witnesses[4]; (2) trial counsel's failure to present expert evidence or offer alternative theories to discredit expert testimony that A. F. suffered from post-traumatic stress disorder; (3) trial counsel's failure to present expert evidence to challenge A. F.'s forensic interview; and (4) trial counsel's failure to object to comments made by the prosecutors in closing argument.

The first three of these instances of alleged deficient performance go to the credibility of A. F.'s accounts of the abuse. Even if trial counsel was deficient for not challenging A. F.'s credibility in the ways Franklin argues he should have done, Franklin has not shown that she was prejudiced, because she has not shown that, "absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Cobb*, 348 Ga. App. at 213 (2) (citation and punctuation omitted). As discussed above, there was overwhelming evidence that Franklin engaged in many of the acts described by A. F., including Franklin's own statements and writings corroborating

---

[4] Contrary to the state's argument, Franklin raised this claim of ineffective assistance in her motion for new trial as amended.

A. F.'s accounts. So any deficient performance in the manner in which trial counsel challenged A. F.'s credibility did not prejudice her defense.

Franklin likewise has not shown prejudice in connection with her final instance of alleged deficient performance, trial counsel's failure to object to two comments made at separate points in closing argument by two different prosecutors. The first of these comments was made in the initial portion of the state's closing argument:

> [Franklin] said that she was withholding Christmas gifts as punishment. Defendant purports to be a Christian and yet we know that God's grace came down as Christ. And one thing that we don't have to earn is Christmas. We don't have to earn it. We don't have to deserve it, but she makes [A. F.] deserve it, even though she gets it for free.

The second of these comments was made by a different prosecutor in the rebuttal portion of the state's closing argument: "[A. F.] stood tall in this courtroom against the evil she lived with for five years."

Considering these comments in the context of the closing argument and the overall trial, see *Adams v. State*, 283 Ga. 298, 302 (3) (e) (658 SE2d 627) (2008) ([c]losing arguments are judged in the context in which they are made"), we do not agree with Franklin's assertion that these comments suggested to the jury that they should base their verdict on "God's law." But the first comment is concerning. While

it could be construed to suggest that Franklin did not sincerely hold her professed religious beliefs, it could also be construed to suggest that she sincerely held those beliefs but that the beliefs themselves were wrong. "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." *West Virginia State Bd. of Educ. v. Barnette*, 319 U. S. 624, 642 (4) (63 SCt 1178, 87 LE1628) (1943). To the extent that the state's closing argument asserted that Franklin's religious beliefs were not a correct interpretation of Christianity, it ran afoul of this constitutional principle. Nevertheless, assuming without deciding that trial counsel performed deficiently by not objecting to the comments, we cannot see that "absent [an objection to the comments], the factfinder would have had a reasonable doubt respecting guilt," *Cobb*, 348 Ga. App. at 213 (2) (citation and punctuation omitted), for the same reason discussed above — the evidence of Franklin's guilt was overwhelming.

Finally, "the effect of prejudice resulting from counsel's deficient performance is viewed cumulatively." *Jackson v. State*, __ Ga. __, __ (9) (__ SE2d __) (Case No. S19A0343, decided June 3, 2019) (citation and punctuation omitted). Recognizing this, "we conclude that the cumulative prejudice from any deficiencies assumed in

30

[this subdivision] is insufficient to create a reasonable probability that the results of the proceedings would have been different in the absence of the deficiencies alleged." Id.

*Judgment affirmed, sentence vacated, and case remanded for resentencing.*

*McMillian, P. J. and Goss, J., concur.*